We move to our fifth case of the day, Taylor v. Brown. May I proceed, Your Honor? Yes, Mr. Fenske. Thank you. May it please the Court, my name is Dan Fenske on behalf of Mr. Taylor. This case is procedurally complex but relatively simple when you look at what actually happened below. It was undisputed below that my client, Mr. Taylor, timely tendered his response to the district court's show cause order before the July 13th deadline. Because of that, under the prison mailbox rule, the response to the show cause order is deemed filed on time before the July 13th deadline. The severance order creating the second claim was only issued because of the district court's mistaken assumption that my client did not object to severance. Therefore, the severance order was issued in error. Mr. Taylor never incurred a second filing fee for the creation of the second case because it never should have been created in the first place. The district court and the judgment ordering him to pay a filing fee or move for IFP status never should have been issued in the first place. And therefore, this court dismissed his case with prejudice and taxing costs for his failure to pay that second filing fee. Now, the defendant argues that this court cannot reverse the severance order because the severance order was initially issued in what we call in the briefs the 104 case, the first case. And my client only appealed from the order issued in the second case, the 631 case. And therefore, this court doesn't have appellate jurisdiction over the severance order, or so the argument goes. That argument we submit is just wrong for two reasons. First of all, the district court in the 104 case ordered that the severance order be placed on the docket in the 631 case. The severance order is therefore part of the 631 case as much as it is part of the 104 case. And the severance order merged into the judgment on review. And do we also then reach over to the other case to bring up the supporting documents? The supporting documents that are relevant to that order, yes. You mean the responses to the order to supporters? Exactly. The record that reflects why the severance order was issued comes up as well. And it includes Mr. Taylor. So the notice of appeal in the 631 case is enough to bring up not only the court's decision on the show clause order, which was actually in that record, but also the responses that were filed only in the 104 case. Yes, Your Honor, because in order to review the severance order, Your Honor needs to know what the severance order was based on. And the severance order was based on, and the record that reflected what the severance order should have been based on, which includes our client's response to the show clause order. Does that require some sort of supplementation of the record in this case? Well, the response to the show clause order in the 631 case was never formally filed by my client in the 631 case. I'm sorry, the response to the show clause order initially filed in the first case was never formally filed in the second case. That's what I mean, right. It was repeatedly referred to, however. And in fact, Mr. Brown invoked the response to the show clause order in his motion to dismiss the 631 case and told the court what it said and said the court can assume that that document was filed on time. So it is in the record in the 631 case. Well, it's in the record indirectly. Yes, indirectly. We don't have the actual document in the record. No, we do not have the actual document in the record in the 631 case. But not only does the court have jurisdiction because the order was filed, because the order was placed on the docket, but also simply because it relates to the case before this court, which is the case that relates to what was originally called count three of the complaint. The defendant also objects now for the first time on appeal to the factual predicate as to whether or not my client timely responded to the show clause order. Below, the defendant conceded it. And I would point the court to document 17 at page 2, which is Mr. Brown's motion to dismiss, where he says on three occasions, quote, plaintiff attempted to agree to dismiss count three of plaintiff's complaint in the 104 case by the court's deadline and before the court directed the clerk to open the instant case. Later, plaintiff attempted to comply with the court's order to show cause by voluntarily dismissing count three before the July 13th deadline. So those statements were a clear concession by the defendant that my client timely responded to the show cause order. Those different judges handling these cases, but the same magistrate judge, is that right? I I'm actually not sure if it's the same magistrate judge or not, Your Honor. Um, Magistrate Judge Fraser oversaw the 104 case, and the district judge itself issued the orders, not the magistrate judge in the second case. So it's Judge Murphy in the second case. Judge Gilbert in the first case. Judge Gilbert's case, at least to the extent that he didn't know that there had been an attempt to file a response to the order to show cause. He certainly didn't know it at the moment of severance, because the order had not been filed at the moment of severance. Severance occurred on July 22nd. I'm talking about when the motion to dismiss is denied. He denies the motion to dismiss that's made by Brown in the second case, thinking that he's doing the plaintiff a favor. Yes, exactly. Um, there clearly was a misunderstanding as to what on the court's part as to what was going on. There's no basis in the record for that misunderstanding, because if you read Mr Brown's motion to dismiss and you read my client's response to Mr Brown's motion to dismiss and his subsequent response, docket 20 in the district court to the district court's order that he pay a filing fee. Both of those responses make clear that my client wanted period no qualifications. The second case dismissed voluntarily in accord with his wishes, as he expressed in the response to the show cause order. Why the district judge appeared to think that his that my client was reluctant to dismiss. The second case is not clear to me based on those filings, but those filings are unequivocal that my client wanted the case dismissed voluntarily period. Um, so in addition to Mr Brown's concession below that, my client responded on time. I'll just briefly summarize the evidence for the court. My client did submit an affidavit attesting to the fact in the 6 31 case that he submitted the document on time. Um, the attorney general's office confirmed in a written letter submitted a document are 30 dash one that they received the response on July 18th 2011, which confirms corroborates that my client filed the document on time and the prison grievance records, which are in the record below, also contain a statement by the prison librarian that Mr Taylor gave her the quote in July, and she found that she obviously did not fail it, at least in this docket. So the evidence is really overwhelming that my client responded to the show cause order on time, and this court has authority to reverse the severance order under the prison mailbox rule on that basis. Um, briefly, I'd just like to address the rule 41 a stipulation issue. Even if the court can't review the severance order, the order under review is still error because the district court was powerless to issue an order under 41 be dismissing the case with prejudice when the case had already been dismissed as a result of the rule 41 a stipulation that the parties agreed to. The defendant, I don't believe on appeal concedes or disputes that the documents were sufficient to constitute a rule 41 a stipulation, and they clearly were under the precedent, simply stating that statements on the record that are clear and unequivocal statements that the parties wish to dismiss the case are sufficient to constitute a rule 41 a stipulation. And the case law from this court in the Marks case and other cases in the Sabo case is clear that a court is powerless to issue an order dismissing a case with prejudice and taxing costs after a rule 41 a stipulation occurred. So on either of those two bases, as well as the other bases in our opening brief and our reply brief, this court should reverse the judgment below. So, um, before you sit down, the mandate line that you're looking for is a reversal with instructions to dismiss without prejudice. Yes. You're not seeking a jurisdictional dismissal? No. Just to be clear. No. I mean your argument about the court's lack of jurisdiction to enter the with prejudice dismissal relates to the prior voluntary dismissal. Yes. We're basically seeking an order directing the court to do what my client asked, which is dismiss the case without prejudice. Thank you. I'll reserve the balance of my time. Mr. Siegel. Good morning and may it please the court, counsel, I'm Assistant Attorney General Evan Siegel on behalf of Defendant James Brown. I agree with counsel that this is a procedurally complex case. A lot of briefing and a lot of moving parts. And I also agree that there's a simple solution, but I think we're going to park company on what that is. There are two main things here that Taylor easily could have done and should have done to avoid the district court's dismissal. Both of them very practical. First, he should have paid the filing fee for the action. And second, and if he couldn't do that, he should have applied for inform a pauper status. Now inexplicably, Mr. Taylor did neither of them. It's not that he supposedly ignored them, as Mr. Taylor claims in his reply brief at page 9. He did ignore them, twice. And that led the district court to dismiss this case with prejudice, as was its right under Rule 41B. Yeah, but he was trying to get it dismissed voluntarily to avoid paying the filing fee and incurring a strike. At least that was the stated rationale that's pretty clear from the record. So, you know, it wasn't that he was not, he was doing nothing. He was doing a whole lot of things. It's just that he wasn't doing what the court was telling him to do. That's right. He tried to create a third or a different option. Let me address the... Well, he was trying to be responsive to the original order to show cause that emanated from Judge Gilbert's case in the severance order to show cause. So he was trying to comply with the orders that he was being given in that case, and then carry them over into the new case once the prison officials screwed up the e-filing. Right. And to your question earlier, Your Honor, about just what came in to this new docket, 631 from 104, there was a suggestion earlier that, well, by inference or reference, the court would get from that separate docket all of the attempts that failed to e-file. That's not exactly true. The severance order itself, which we do not dispute, is in this record, specifically brings in five additional items, including our answer filed on June 17th. It does not bring in the first 36 documents in the 104 docket. Had the district court on severance wanted to do that, it could have. So we're in this perhaps odd situation that the actual order severing is before the court, but the reasons for that severance, the very reason that the district court in 104 did never heard from Mr. Taylor, is not before this court except by reference in later documents. Well, why doesn't it include documents that at least relate to the severance order? Otherwise, you know, we can't meaningfully review the severance order without looking at the documents that relate to it. The four corners of the severance order list, the order of July 21st, list exactly what comes in. Now maybe this court can, by judicial notice, look at those other documents, or maybe there was another option here for Mr. Taylor, within the confines of the 104 case, to wait until that case ended, and then to appeal from a decision in that case to address whether the severance, which emanated in that case, was properly handled. To be sure, we would have been out of that 104 case at that moment. We easily could have in that case, on this very issue, but he didn't do that. And I don't think that an interlocutory appeal, well it might have been an option to him. He could have also sought a certificate of appealability in that 104 case. Has the statute of limitations run on the claim against Brown? I think it's, I'm not sure, Your Honor. The events in question were 09, and to what extent there was tolling because of the proceedings here, I can't say. If the court would like, I could submit a letter. Well, I'm just wondering why you're pressing so hard on this? Are you just trying to avoid, or keep the costs order which was in your favor, and keep the with prejudice dismissal? Well, because what's being asked for is a, just a dismissal of a different sort, which leaves, you know, restores the situation to what Mr. Brown was facing before. Well, I've never heard until today, and maybe I misheard it just now, that Mr. Taylor has no interest in suing Mr. Brown. He's not said that he doesn't want to sue Mr. Brown in his briefs. What comes to the fore is that he doesn't want to sue Mr. Brown now. Maybe he, you know, doesn't want to litigate multiple cases at one time, or he doesn't want to sue Mr. Brown and pay the filing fee that he was ordered to pay. Just telescoping back up, I'm not really certain what the strategy is here, but certainly we know from his ignoring the two court orders that he didn't want to pay the filing fee, or for some reason, inexplicably, apply for IFP status, even though he well knows how to do this. He's a frequent IFP filer. He got IFP in the 104 case. Well, right, but IFP isn't necessarily a free pass. He's got to pay the filing fee over time, and maybe he decided the case against Brown just wasn't worth it, and he wanted to maintain the case against the other defendants. He's never said that, and there's no, as we say in our briefs, there's no settlement on the merits. There was no exchange of money. I'm, we're left with the impression that he very much wants to sue Mr. Brown. He's never said otherwise. Now I want to focus on the questions about the Rule 41a stipulation. I think that's really at the heart of this case, because the mailbox rule does not, ultimately does not aid Mr. Taylor. Let's assume that Mr. Taylor had successfully communicated to the district court in around July of 2011 in the 104 case that he wanted to voluntarily dismiss count three. That effort was a nullity for two reasons. Under Rule 41a, a party cannot dismiss, voluntarily dismiss, a single count, and Mr. Taylor concedes that. On page 39 of his opening brief. Right, but the court was telling him he had to. Correct. The court, the error emanates from the court, and Mr., there's no doubt, and Mr. Taylor has cited cases in a footnote in his reply brief where it's the practice of district courts in the Southern District to ask parties if they want to voluntarily dismiss a count. But the rule, we're strictly construing Rule 41a, it doesn't, it distinguishes between claims and actions. There is no voluntarily, voluntary dismissal of a count. Secondly, beyond that, Mr. Brown, as I mentioned earlier, answered the complaint on July, on June 17, 2011. The Rule 41a, the voluntary dismissal part of that, prohibits voluntary dismissal after that date. So we're left with one possibility. By stipulation, it can be done by stipulation. Under stipulation is the second. Or by court order. Or by court order. There was no stipulation here. There was no stipulation here. There was no meeting of the minds. Well, there was agreement. Well, there wasn't. I disagree, Your Honor. Brown, my client moved to dismiss the entire action on August 18th in documents 16 and 17. A week later, and let's put aside that there was a reachback into the 104 case. Let's assume we're talking just about the new case. But it wasn't a merits dismissal motion. It was a dismissal motion based on what Taylor was trying to accomplish, which is dropping the case against Brown. We asked, we asked for it, we didn't get it. We didn't have a basis for it. The district court, the ground shifted in the litigation. But this is critical. The response by Mr. Taylor was a non sequitur. He's talking about his Where does he agree to dismiss the 631 case in its entirety? What he says in document 19 of page 4 is he's agreeing to dismiss the count 3 without prejudice. It's not an agreement to dismiss the action. Well, that's the only thing in the second case. Well, it's not. So that's the same thing, even though he didn't use the right terminology. It may be the same thing if there's some sort of identity, but we have another problem. There's not a knowing, voluntary, clear, explicit, unqualified statement of voluntary intent. It's not knowing. We have, we have a very odd situation here that Mr. Taylor is asking this court to adopt a rule that the parties somehow unknowingly, sub rosa, agreed to stipulate to a dismissal, an accidental stipulated dismissal. They're talking past each other. There's not even a request in my motion to dismiss for prejudice. So they're incorrect when they say in the reply brief that the parties clearly wanted to dismiss both of them with prejudice. They didn't. Just briefly, if I may conclude on the mailbox rule, it doesn't help because even if the filing was on time, again, he's asking to dismiss a single claim, not permissible under Rule 41A, and it's post answer. So for all these reasons, Your Honor, we would ask the court to affirm the district court's correct and justified dismissal of Mr. Taylor's failure to comply with two court orders. Thank you, Mr. Siegel. Mr. Fenske, anything further? As to the issue of whether or not Rule 41 was the proper procedural vehicle to dismiss this case, prior to the severance order, we agree that under the Bertholdt case, the Rule 41 did not authorize the parties to dismiss the case a single count because at that point the case had two claims. It sounds like the Southern District has to adopt a little different rule. Well, inviting an amended complaint maybe instead of a dismissal? Exactly, Your Honor, but they're functionally the same thing, and if you read Wright and Miller and all of the cases that we mentioned from other circuits, they say when you ask for a you don't invoke the proper rule, the court should construe it as under the proper rule. So the request below should have been construed as a motion to amend the complaint to drop count three. And as to the 631 case, there was only one claim, as Your Honor said, so the rule applies there. And then I thought I heard counsel for the first time even after the briefs dispute whether the parties actually agreed to dismiss this case. I don't see anything in the brief disputing that there was an unequivocal agreement. There were a lot of technical procedural arguments for why it wasn't effective, but nothing to suggest that it was not an agreement. And for the reasons laid out in that briefing, there clearly was such an agreement. Unless there are any further questions. I don't think so. Thank you, Mr. Fenske. And you took this appointment at the behest of the court, did you not? Yes. And we are grateful for your assistance to the court and to your client. My pleasure. Thank you, Your Honor. Thank you. Our thanks to both counsel. The case is taken under advisement.